50 So.2d 737

### HIGHTOWER BOX & TANK CO., Inc. v. SNODDY et al.
6 Div. 958, 958–A.

Supreme Court of Alabama.
Feb. 8, 1951.

Rehearing Denied March 1, 1951.

London & Yancey, Geo. W. Yancey and Frank E. Lankford, Birmingham, for appellant.

Maurice F. Bishop, Birmingham, for appellees.

BROWN, Justice.

There are two separate appeals in two cases arising out of the same incident, the merits of which rest upon the same facts, tried at the same time before the same jury on similar counts in the respective complaints, except as to the elements of the damages claimed. Said counts are designated as Count "A" to which, after demurrer interposed and overruled, the defendant pleaded the general issue "not guilty" in short by consent with leave to give in evidence any matter if specially pleaded by the defendant would constitute a defense and with like leave to the plaintiff to reply.

The first case is an action on the case by Robert Lee Snoddy, suing by next friend, his mother, for personal injuries caused by an automobile truck owned by defendant being run upon or against him upon a public street in Birmingham while being operated by Eddie Lee Nathan, a person not in the defendant's employ.

The other suit is by the mother of the first named plaintiff claiming damages for the loss of services of her minor son and expenses of hospitalization of said son incident to his injuries.

Said count in the suit by Robert Lee Snoddy avers: "Plaintiff claims of the defendant, the sum of Fifty Thousand Dollars ($50,000.00), as damages, for that heretofore, on, to-wit, the 27th day of November, 1947, the defendant was engaged in business in the City of Birmingham, Jefferson County, Alabama, that on said date a servant, agent or employee of the defendant while acting within the scope of his employment negligently permitted or negligently consented to the operation over the public streets or avenues of the City of Birmingham, Alabama, of a motor vehicle owned by the defendant, to-wit, a 1942 Chevrolet, 1½ Ton Truck, with 1948 Alabama Licence Tag. No. 1H2–2969, and plaintiff avers that at said time said vehicle was in a defective and dangerous condition and not reasonably safe to be so operated over the streets and avenues of said city, and that its defective and dangerous condition was known to defendant, or the defendant could by reasonable inspection have had knowledge of said defective and dangerous condition of said motor vehicle; and plaintiff avers that thereafter, on, to-wit, said date, while said motor vehicle was in such defective and dangerous condition and was being driven along or upon a public street or avenue in the City of Birmingham, Jefferson County, Alabama, at, to-wit, 44th Place North between 8th and 9th Avenues, as a proximate consequence and result of the defective and dangerous condition of said motor vehicle, it was caused or allowed to run into, over, upon or against the plaintiff, at or near the front porch of a residence located and described as 804 North 44th Place, in said city and county, where plaintiff was and had a right to be, and as a proximate consequence and result thereof, the plaintiff was caused to sustain and suffer, and did sustain and suf-

fer, the following injuries and damages" (cataloguing said injuries).

The gravamen of said count is, "a servant, agent or employee of the defendant with knowledge of the defective condition of said truck, or who was negligent in failing to discover its dangerous condition, *while acting within the scope of his employment negligently permitted or negligently consented to the operation over the public streets or avenues of the City of Birmingham, Alabama,*" of said automobile truck which, as the count avers was a conclusion, "was in a defective and dangerous condition and not reasonably safe to be so operated over the streets \* \* \*." While the sufficiency of said count was tested by demurrer, there is no assignment of error predicated on the overruling of the demurrer. [Italics supplied.]

The evidence shows without dispute that the defendant as its name imports was engaged in business in Birmingham, the business of manufacturing boxes and tanks, and maintained lumber yards and machinery suitable for that purpose. It also owned and used in its business three trucks, two for delivery from the plant to its customers and the truck, the subject of this suit, a yard truck used in the lumber yards for transferring materials from one point in the yard to another. The evidence goes to show that the defendant had a regular driver for each of said trucks, and a rule that the trucks were not to be driven off the plant premises without the direction of the superintendent in control of the trucks and drivers or the superintendent of the plant. The day on which plaintiff received his injuries was Thanksgiving Day, November 27, 1947, and the plant was shut down. The only crew working on that day was a crew of from six to eight men working under A. C. Whitten, "engineer and general maintenance man", as he styled himself, installing a steam pipe line from the boilers to the engine room. The boilers were covered by a shed not enclosed by walls.

Mathew Nathan who was one of the crew of men working with and under Whitten was, when the plant was in operation, the fireman of the steam boilers.

There was no other foreman or supervisor on duty on that day except A. C. Whitten.

The trucks were parked on the yards at the usual place and the key to the truck in question was left in the keyhole by the regular driver of said truck.

Nathan testified that when the crew engaged under Whitten in installing said steam line stopped at noon he asked the truck driver where the keys to the yard truck were and said driver told him that they were in the car. Nathan thereupon got in the truck, started the motor, and some of the other members of the crew got on the truck and he started to his cousin's house to have Thanksgiving dinner with her. Witness let some of those on the truck off within a block or two from the defendant's plant and another got off some distance from where the first lot got off; he then drove the truck to his cousin's house and parked the same on the street headed away from the plant. He left the keys in the truck and told his brother Lee Nathan, while he was at dinner to turn the truck around and head it back towards the defendant's plant; that he had to get back by 12:30 o'clock.

The evidence further shows that Lee Nathan had no license to drive motor vehicles on the streets or otherwise and in his attempt to turn the truck around it got out of his control, "rared up" and ran upon the sidewalk and the porch of the house near where plaintiff was, running along the street and struck or collided with plaintiff and injured plaintiff.

The witness Mathew Nathan further testified, without objection and without stating the facts supporting his conclusion, that the accelerator pedal was defective and would hang or stick sometimes, that he had not driven this truck before, that the truck had no fenders, no seat cushions and that a coca cola box was used by the driver as a seat; that the steering gears were perfect; that he was watching the truck when the accident occurred and while he could not see Lee Nathan's feet, who fell off the seat, that he either tried to put on the brake and missed it and stepped on the accelerator pedal, or the pedal stuck and caused the truck to "rare up" and cross

the sidewalk and hit the porch of the house. Said witness testified that he asked no one for permission to take said truck off the yard of defendant and that no one gave him permission to do so.

The witness also testified that when he got on the truck and started to drive it off to go to dinner, Mr. Whitten was under the boiler shed at a point between the boilers and the truck and if he was looking at or towards the truck, he could have seen him (witness) start the truck and drive it towards the street; there was nothing to prevent him from seeing witness, but that he said nothing to witness,—made no objection to witness taking the truck.

Whitten testified that he was the only foreman on duty that day. That it is necessary that the plant be shut down to do the work of putting a steam line from the boilers to the engine room; that Mathew Nathan was one of his crew of men; that they stopped work at 12 noon for lunch and when he, Whitten, left to go home for lunch Mathew Nathan "was sitting on the tool bench in the boiler room" and the others had gone to lunch. "I just remember I told him (Mathew Nathan), it was lunch time. He said he wasn't going to eat any lunch. 'I will make this out and get mine for supper.' * * *." He did not ask me to use a truck of any kind to go to lunch or for any purpose. I was the only man in charge of the work out there that day. "There is a rule there that no one should leave the yard with the trucks without the regular driver or permission from the General Superintendent and I had nothing to do with the trucks whatsoever." "That truck (referring to the one that Mathew Nathan used to go to dinner) was not being driven on this Thanksgiving Day. The driver did not have the truck that morning. It had not been driven around the place, not with my knowledge. I had never told Nathan not to take this truck off the yard. This was out of my jurisdiction. I was his boss man at the time."

At the conclusion of the evidence defendant's counsel moved to exclude all of the evidence and this motion was overruled. Thereupon the defendant's counsel requested the general affirmative charge in writing in its favor and this charge was refused by the court.

The appellee insists that the charge was properly refused; that the testimony as a whole afforded an inference, which it was within the province of the jury to draw, that Whitten saw Mathew Nathan take the truck, get on the truck and drive it out of the plant yard on the street, with the permission of Whitten, his boss; that Whitten had knowledge of the defective condition of the truck, or in the exercise of reasonable diligence within the line and scope of his employment should have known of said defective condition; that Whitten had authority, notwithstanding he testified to the contrary, to permit the use of said truck by Mathew Nathan; that Whitten was then and there acting within the line and scope of his employment in authorizing Nathan to take the truck.

We are of opinion that these contentions cannot be sustained. This would leave the jury in the realm of conjecture and speculation, building an inference upon an inference. We are, therefore, of opinion that the court erred in refusing the affirmative charge requested by the defendant, and for this error, the judgment must be reversed. Atlantic Coast Line R. Co. v. R. L. Cooper Lumber Co., 219 Ala. 484, 122 So. 661; St. Louis & S. F. R. Co. v. Dorman, 205 Ala. 609, 89 So. 70; Smith v. Eudy, 216 Ala. 113, 112 So. 640.

Reversed and remanded.

FOSTER, LIVINGSTON and LAWSON, JJ., concur.